# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO, EX REL., HECTOR BALDERAS, ATTORNEY GENERAL, <br><br> Plaintiff, <br><br> - v. - <br><br> PURDUE PHARMA L.P.; PURDUE PHARMA, INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; NORAMCO, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN PLC f/k/a ACTAVIS PLC; WATSON PHARMACEUTICALS, INC. n/k/a ACTAVIS, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.; MALLINCKRODT PLC; MALLINCKRODT LLC; INSYS THERAPEUTICS, INC.; McKESSON CORPORATION; CARDINAL HEALTH INC.; CARDINAL HEALTH 105, LLC; CARDINAL HEALTH 108, LLC; CARDINAL HEALTH 110, LLC; CARDINAL HEALTH 200, LLC; CARDINAL HEALTH 414, LLC; CARDINAL HEALTH PHARMACY SERVICES, LLC; and AMERISOURCEBERGEN DRUG CORPORATION, <br><br> Defendants. | Civil Action No. <br> 1:18-cv-00386-JCH-KBM |

# McKESSON'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND MOTION TO EXPEDITE

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.     The Court Should Temporarily Stay This Litigation Pending a Decision by the
       JPML. ............................................................................................................. 2

       A.     A Stay Will Not Prejudice Plaintiff. ..................................................... 3

       B.     The Distributor Defendants Will Be Prejudiced Absent a Stay. ............ 6

       C.     A Stay Will Conserve Judicial Resources and Reduce Duplication. ...... 6

II.    The Complaint States a Substantial Federal Question, and Was Properly
       Removed. ........................................................................................................ 8

       A.     Plaintiffs' Complaint Necessarily Raises a Federal Issue. ..................... 9

       B.     The Federal Issue in The Complaint Is Actually Disputed. ................. 13

       C.     The Federal Issue in the Complaint Is Substantial. ............................. 14

       D.     Permitting a Federal Court to Decide the Boundaries of Federal Law
              Maintains the Federal-State Balance. .................................................. 16

III.   The Complaint Facially Pleads a Federal Question, Independently Justifying
       Removal. ....................................................................................................... 18

CONCLUSION ....................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avants v. Prospect Mortg., LLC*,
No. 13CV0376 WJ/KBM, 2013 WL 11826548 (D. N.M. Oct. 9, 2013).............................4, 6

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005).............................................................................................14, 15

*Caterpillar, Inc. v. Williams*,
482 U.S. 386 (1987).................................................................................................................18

*City of Paterson v. Purdue Pharma L.P.*,
C.A. No. 2:17-13433 (D.N.J. Dec. 20, 2017) ..........................................................................5

*Delaware v. Purdue Pharma L.P.*,
No. 1:18-cv-00383-RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018)..................................13

*Empire Healthchoice Assur., Inc. v. McVeigh*,
547 U.S. 677 (2006)................................................................................................................20

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S.*
*California*,
463 U.S. 1 (1983)........................................................................................................9, 17, 20

*Gilmore v. Weatherford*,
694 F.3d 1160 (10th Cir. 2012) .........................................................................................9, 15

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)......................................................................................................... *passim*

*Gully v. First Nat'l Bank*,
299 U.S. 109 (1936)................................................................................................................12

*Gunn v. Minton*,
568 U.S. 251 (2013)..............................................................................................13, 14, 16, 17

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
535 U.S. 826 (2002)................................................................................................................18

*Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*,
No. 3:14CV706, 2015 WL 222312 (E.D. Va. Jan. 14, 2015)...................................................5

*Iowa v. McGraw-Hill Companies, Inc.*,
No. 4:13-CV-00111, 2013 WL 12308088 (S.D. Iowa Apr. 17, 2013) .....................................5

*Jones v. Hobbs*,
745 F. Supp. 2d 886 (E.D. Ark. 2010) ...................................................................................16

*Kentucky v. McKesson Corp.*,
No. 3:18-cv-00010-GFVT (E.D. Ky. Apr. 12, 2018) ................................................................4

*Kentucky v. Volkswagen Grp. of Am., Inc.*,
No. 16-CV-27-GFVT, 2016 WL 3040492 (E.D. Ky. May 25, 2016) ......................................5

*Levy v. Volkswagen Akti Engesellschaft*,
No. 1:15-CV-01179-RJ-LF, 2016 WL 8261798 (D.N.M. Feb. 22, 2016) ..............................7

*West Virginia ex rel. McGraw v. CVS Pharm., Inc.*,
646 F.3d 169 (4th Cir. 2011) ..................................................................................................17

*In re Microsoft Corp. Antitrust Litig.*,
127 F. Supp. 2d 702 (D. Md. 2001) .........................................................................................20

*Mississippi v. Bristol-Myers Squibb Co.*,
No. 1:12-CV-00179-GHD-DAS, 2013 WL 30098 (N.D. Miss. Jan. 2, 2013) ........................5

*Montana v. Abbott Labs., Inc.*,
No. 6:02-cv-0009-DWM (D. Mont. June 21, 2002) .................................................................5

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014) .............................................................................................9, 12

*Nevada v. Am. Home Prods. Corp.*,
No. 3:02-cv-00202-ECR-RAM (D. Nev. July 26, 2002) .........................................................5

*New Hampshire v. Purdue Pharma*,
No. 17-cv-427-PB, 2018 WL 333824 (D. N.H. Jan. 9, 2018) ...............................................17

*New Mexico v. Volkswagen Grp. of Am., Inc.*,
No. 1:16-CV-00147-MCA-LF, 2016 WL 4072342 (D.N.M. Apr. 27, 2016) ................ *passim*

*Nicodemus v. Union Pac. Corp.*,
440 F.3d 1227 (10th Cir. 2006) ..........................................................................................8, 20

*Ohio v. Dey, Inc.*,
No. 1:06-CV-00676-SSB-TSB (S.D. Ohio Jan. 16, 2007) ......................................................5

*Pace v. Merck & Co.*,
No. CIV 04-1356 MCA/ACT, 2005 WL 6125457 (D. N.M. Jan. 10, 2005) ....................4, 6, 7

*Pennsylvania v. TAP Pharm. Prods., Inc.*,
No. 06-CV-4514-LDD (E.D. Pa. Jan. 23, 2007) ......................................................................5

iii

*PNC Bank, N.A. v. PPL Elec. Util. Corp.*,
    189 F. App'x 101 (3d Cir. 2006) ........................................................9

*Rivers v. Walt Disney Co.*,
    980 F. Supp. 1358 (C.D. Cal. 1997) ..................................................2

*Torres v. Johnson & Johnson*,
    No. CIV. 14-743 KG/RHS, 2014 WL 6910478 (D. N.M. Sept. 16, 2014) ..............................3

*Utah v. Abbott Labs., Inc.*,
    No. 2:07-cv-00899-DS (D. Utah Feb. 5, 2008) ....................................5

*West Virginia v. McKesson Corp.*,
    No. CV 16-1772, 2017 WL 357307 (S.D. W. Va. Jan. 24, 2017)..........................13

**Statutes**

21 U.S.C. § 801 *et seq.*............................................................... *passim*

21 U.S.C. § 821 ..............................................................................14, 16

21 U.S.C. § 823 ...................................................................................19

21 U.S.C. § 826 ...................................................................................14

21 U.S.C. § 882 ...................................................................................16

21 U.S.C. § 903 ...................................................................................16

NMSA 1978, § 30-31-13 (1972)...........................................................10

**Other Authorities**

16.19.8.13 NMAC.........................................................................10, 11

16.19.8.18 NMAC.........................................................................10, 11

16.19.20.48 NMAC..................................................................10, 11, 18

16.19.20.49 NMAC...........................................................................12, 18

21 C.F.R. § 1301.74 .................................................................... *passim*

H.R. Rep. No. 91-1444 (1970)...............................................................16

Press Release, *Attorney General Balderas Files Lawsuit Against Opioid*
    *Manufacturers and Distributors for Fueling Opioid Epidemic that is*
    *Crippling New Mexico*, State of New Mexico, Office of the Attorney General,
    Sept. 7, 2017 ......................................................................................4

Press Release, *Attorney General Balderas Adds New Defendants & Claims to Opioid Lawsuit*, State of New Mexico, Office of the Attorney General, Dec. 20, 2017..............................................................................................................................4

## INTRODUCTION

Distributor Defendant McKesson removed this case to federal court because Plaintiff stated claims that—at least with respect to the Distributor Defendants—allege violations of federal law.[1]  Specifically, each of Plaintiff's claims depends on allegations that the Distributor Defendants violated federal regulatory obligations promulgated under the federal Controlled Substances Act, 21 U.S.C. §§ 801, *et seq*. (the "federal CSA").  The Distributor Defendants moved to stay this litigation pending a decision by the Judicial Panel on Multidistrict Litigation ("JPML") on whether to transfer this case to a multidistrict litigation ("MDL") in the Northern District of Ohio, which was established to consolidate and hear hundreds of cases like this one.  That question will be fully briefed before the JPML on June 12, 2018.  Plaintiffs have now moved to remand this case for lack of subject matter jurisdiction, and to expedite the remand proceedings.  Plaintiff's motions should be denied.

As described below, the MDL was established to oversee orderly proceedings in hundreds of lawsuits alleging claims indistinguishable from the ones Plaintiff asserts here.  If transferred, this case would join those cases that, like this one, assert various state law claims for negligence, public nuisance, and violations of state unfair practices laws, all premised on the alleged over-distribution of opioid pharmaceuticals.  Under well-established precedent, this Court should stay any remand decision until the JPML decides whether to transfer this case.

---

[1] "McKesson" is Defendant McKesson Corporation; "Plaintiff" is Plaintiff State of New Mexico, *ex rel*. Hector Balderas, Attorney General.  The other Distributor Defendants are AmerisourceBergen Drug Corporation ("ABDC"); and Cardinal Health, Inc.; Cardinal Health 105, LLC; Cardinal Health 108, LLC; Cardinal Health 110, LLC; Cardinal Health 200, LLC; Cardinal Health 414, LLC; Cardinal Health Pharmacy Services, LLC (collectively, the "Cardinal Health Entities").  ABDC and the Cardinal Health Entities concur in this Opposition.

If this Court considers Plaintiff's remand motion in advance of the JMPL's determination of whether to transfer this case, that motion should be denied.  As explained below, under binding Supreme Court precedent, Plaintiff's allegations against the Distributor Defendants state substantial federal questions regardless of Plaintiff's attempt to couch those claims in state law.  Separately and additionally, the Complaint facially pleads federal questions by relying on allegations of federal law.  Accordingly, jurisdiction in this Court is proper.

## ARGUMENT

I.   **The Court Should Temporarily Stay This Litigation Pending a Decision by the JMPL.**

As explained in the Distributor Defendants' pending Motion to Stay,[2] this Court should defer ruling on Plaintiff's Motion for Remand and permit the JPML to determine whether this action belongs in the pending MDL, which was established to efficiently handle cases exactly like this one.  Temporarily staying the case under these circumstances is squarely in line with this Court's precedents.[3]

In deciding motions for a stay pending transfer to an MDL, this Court considers: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated."  *New Mexico v. Volkswagen Grp. of Am., Inc.*, No. 1:16-CV-00147-MCA-LF, 2016 WL 4072342, at *2 (D.N.M. Apr. 27, 2016) (quoting *Rivers*

---

[2] *See* Distrib. Defs.' Joint Mot. to Stay Pending Ruling by Judicial Panel on Multidistrict Litig. ("Mot. to Stay") [Doc. 5].

[3] For the same reasons, Plaintiff's request for expedited consideration of its pending Motion to Remand, *see* State of New Mexico's Mot. to Remand ("Pl.'s Mot. to Remand") [Doc. 10]; Mot. to Expedite State of New Mexico's Mot. to Remand ("Pl.'s Mot. to Expedite") [Doc. 11], is wholly unwarranted.  Accordingly, the Distributor Defendants oppose Plaintiff's Motion to Expedite and incorporate the reasoning for their opposition in Part I of this Motion.

*v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)) (granting stay pending JPML transfer decision over New Mexico Attorney General's opposition).   All three factors favor a stay in this case.[4]

### A.      A Stay Will Not Prejudice Plaintiff.

Plaintiff will not be prejudiced by a temporary stay to allow the JPML to determine whether this case belongs in the pending opioid MDL.   When establishing the opioid MDL, the JPML overruled objections to consolidation very similar to those Plaintiff makes here.   In rejecting those arguments, the JPML explained that the consolidated proceeding involves "cities, counties *and states* that allege that . . . distributors failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates."   JPML Transfer Order, *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L.), Dkt. No. 328, at 3 (emphasis added).   Plaintiff argues it will suffer prejudice by not litigating in its chosen forum, *see* Pl.'s Mot. to Expedite at 13, or by suffering some delay, *id.* at 14, but the JPML rejected such arguments against centralization when forming the MDL.   *See* JPML Transfer Order at 3 ("While we appreciate these arguments, we are not persuaded by them."); *see also Torres v. Johnson & Johnson*, No. CIV. 14-743 KG/RHS, 2014 WL 6910478, at *2 (D.N.M. Sept. 16, 2014) (rejecting argument that stay would prejudice plaintiffs by "depriv[ing] them of their right to bring their case in their chosen forum").

Plaintiff's argument concerning potential prejudice from a short delay is particularly unpersuasive here, where Plaintiff waited approximately six months between initiating this

---

[4] Plaintiff also cites an out-of-district standard that encourages the district court to review the merits of a motion to remand before deciding whether to stay the case.  *See* Pl.'s Mot. to Expedite at 10 n.7.  That standard is expressly not the law in this district.  *See Volkswagen Grp. of Am., Inc.*, 2016 WL 4072342, at *1 ("*Meyers* is not controlling in this district.").

lawsuit and serving the Complaint on each of the defendants.[5]   As this Court explained in similar circumstances, there is no prejudice from a stay when "there has not been a significant amount of activity in this matter so far as the case is in the early stages."   *Avants v. Prospect Mortg., LLC*, No. 13CV0376 WJ/KBM, 2013 WL 11826548, at *2 (D.N.M. Oct. 9, 2013) (granting motion for stay pending transfer to MDL); *see also Volkswagen Grp. of Am., Inc.*, 2016 WL 4072342, at *2 (rejecting New Mexico Attorney General's argument under this factor and explaining that "[n]ot knowing when a court may rule on a motion does not constitute prejudice to plaintiff."); *Pace v. Merck & Co.*, No. CIV 04-1356 MCA/ACT, 2005 WL 6125457, at *2 (D.N.M. Jan. 10, 2005) (granting stay and explaining "potential prejudice to Plaintiffs is minimal, as the Panel expects to render its decision later this month").

As explained in the Distributor Defendant's Motion for Stay, there is nothing novel about granting a stay pending transfer to an MDL when the plaintiff is a state attorney general.   This Court recently granted such a motion under closely analogous circumstances, *see generally Volkswagen Grp. of Am., Inc.*, 2016 WL 4072342, and the Eastern District of Kentucky did the same in the ongoing opioid litigation, *see* Order, *Kentucky v. McKesson Corp.*, No. 3:18-cv-00010-GFVT (E.D. Ky. Apr. 12, 2018) (Dkt. No. 14).   Many other courts have reached the same

---

[5] Although Plaintiff did not expeditiously serve the defendants in this action, Plaintiff did issue various press releases announcing the filing of the initial, unserved complaint, and then the First Amended Complaint, which also went unserved for months.   *See* Press Release, *Attorney General Balderas Files Lawsuit Against Opioid Manufacturers and Distributors for Fueling Opioid Epidemic that is Crippling New Mexico*, State of New Mexico, Office of the Attorney General, Sept. 7, 2017 (initial complaint); Press Release, *Attorney General Balderas Adds New Defendants & Claims to Opioid Lawsuit*, State of New Mexico, Office of the Attorney General, Dec. 20, 2017 (First Amended Complaint) (both available at https://www.nmag.gov/press-releases.aspx).   These tactics further demonstrate that Plaintiff will suffer no meaningful prejudice from a stay pending a decision by the JPML.

conclusion under similar circumstances.[6]  The efficiency and lack of prejudice that the courts identified in those cases are equally present here.

Nor is there anything about a removal based on federal question jurisdiction, rather than diversity, which counsels against a stay.  Each of the stayed state attorney general actions identified above and in the footnote—including New Mexico's—was removed based on federal question jurisdiction.  Further, in addition to the Kentucky AG action, other actions in the pending opioid MDL were removed to federal court based on federal question jurisdiction, and pending remand motions in those cases will be addressed together by the MDL judge.  *See, e.g.*, *In re National Prescription Opiate Litig.*, MDL No. 2804, Dkt. No. 1134 (J.P.M.L. Apr. 5, 2018) (transferring, *inter alia*, *City of Paterson v. Purdue Pharma L.P.*, C.A. No. 2:17-13433 (D.N.J. Dec. 20, 2017), removed on federal question grounds to the MDL despite pending motion to remand).

---

[6] *See, e.g.*, *Kentucky v. Volkswagen Grp. of Am., Inc.*, No. 16-CV-27-GFVT, 2016 WL 3040492, at *2 n.3 (E.D. Ky. May 25, 2016) (staying Kentucky's motion to remand pending JPML transfer decision); *Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, No. 3:14CV706, 2015 WL 222312, at *5 (E.D. Va. Jan. 14, 2015) (staying Virginia's motion to remand pending JPML transfer decision); *Iowa v. McGraw-Hill Companies, Inc.*, No. 4:13-CV-00111, 2013 WL 12308088, at *2 (S.D. Iowa Apr. 17, 2013) (staying Iowa's motion to remand pending JPML transfer decision); *Mississippi v. Bristol-Myers Squibb Co.*, No. 1:12-CV-00179-GHD-DAS, 2013 WL 30098, at *2 (N.D. Miss. Jan. 2, 2013) (staying Mississippi's motion to remand pending JPML transfer decision); Order, *Utah v. Abbott Labs., Inc.*, No. 2:07-cv-00899-DS (D. Utah Feb. 5, 2008) (staying Utah's motion to remand pending JPML transfer decision) [Doc. 5-2]; Order, *Pennsylvania v. TAP Pharm. Prods., Inc.*, No. 06-CV-4514-LDD (E.D. Pa. Jan. 23, 2007) (staying Pennsylvania's motion to remand in action "based solely on state law claims" pending JPML transfer decision and finding that "judicial economy and consistency would best be served by awaiting the decision of the JPML") [Doc. 5-3]; Order, *Ohio v. Dey, Inc.*, No. 1:06-CV-00676-SSB-TSB (S.D. Ohio Jan. 16, 2007) (staying Ohio's motion to remand pending JPML transfer decision) [Doc. 5-4]; Mins. of Continued Hr'g, *Nevada v. Am. Home Prods. Corp.*, No. 3:02-cv-00202-ECR-RAM (D. Nev. July 26, 2002) (denying Nevada's motion for remand and staying action pending transfer to MDL) [Doc. 5-5]; Order, *Montana v. Abbott Labs., Inc.*, No. 6:02-cv-0009-DWM (D. Mont. June 21, 2002) (staying Montana's motion to remand pending JPML transfer decision) [Doc. 5-6].

In short, Plaintiff will not suffer any prejudice by having its remand motion considered by a judge responsible for coordinating national opioid litigation and considering virtually identical motions together.

**B.      The Distributor Defendants Will Be Prejudiced Absent a Stay.**

By contrast, the Distributor Defendants *will* suffer prejudice absent a stay.   The Distributor Defendants are in the midst of early discovery and dispositive motions practice in the MDL.   The MDL judge has formed a litigation track, and discovery is underway in numerous cases.   As this Court explained in nearly identical circumstances, "the potential prejudice to defendants in terms of duplicative motions practice and discovery outweighs plaintiff['s] interest in a speedy determination of their motion." *Volkswagen Grp. of Am., Inc.*, 2016 WL 4072342, at *2.   In contrast to the orderly process the MDL affords, the Distributor Defendants would suffer significant prejudice if "forced to repeat a large amount of discovery and motion practice in each of the separate cases." *Avants*, 2013 WL 11826548, at *2 (noting this factor favored stay pending JPML transfer decision); *see Pace*, 2005 WL 6125457, at *2 (identifying "a significant risk of duplicative motion practice and redundant discovery proceedings" as grounds for staying an action pending JPML transfer decision).   These considerations apply with even greater force here, given the scale of the pending MDL, and the proceedings should be stayed to avoid prejudice to the Distributor Defendants.

**C.      A Stay Will Conserve Judicial Resources and Reduce Duplication.**

Staying this case pending a JPML transfer decision will substantially reduce duplication and conserve judicial resources.   Despite Plaintiff's arguments to the contrary, this case presents complex issues of federal law that should be addressed consistently.   As this Court has acknowledged, the aim of consistent treatment is best accomplished by presenting the common

issues to the federal judge assigned to organize and consider hundreds of related cases together. *See Levy v. Volkswagen Akti Engesellschaft*, No. 1:15-CV-01179-RJ-LF, 2016 WL 8261798, at *2 (D.N.M. Feb. 22, 2016) (holding that "a stay would prevent duplicative and possibly inconsistent rulings and would conserve judicial resources"); *Pace*, 2005 WL 6125457, at *2 (holding "judicial economy best served by allowing a single court to determine with uniformity the various issues presented in the hundreds of currently pending . . . cases"). In fact, "it would be a waste of this Court's judicial resources to consider a motion to remand on a case that ultimately may be transferred to the MDL." *See Volkswagen Grp. of Am., Inc.*, 2016 WL 4072342, at *2. And even if Plaintiff's position on remand had merit, considerations of judicial economy favor transfer of that issue to the MDL court as well, because that court already has many similar motions before it. *See id.* ("There is no need to duplicate work or risk inconsistent results. As the magistrate judge points out, staying this matter does not foreclose the state's jurisdictional challenge because the MDL court will provide a forum for the motion to remand."). Plaintiff cannot dispute that the MDL judge already must decide virtually identical arguments to the ones Plaintiff asks this Court to consider. Every forum in which those issues must be re-litigated risks wasting judicial resources and generating inconsistent decisions on a matter of overriding public concern.

Plaintiff's unremarkable citations describing the primacy of subject matter jurisdiction have no bearing on its demand that the Court quickly decide its motion to remand. *See* Pl.'s Mot. to Expedite at 5–9. No party disputes that federal lawsuits require federal subject matter jurisdiction. But "staying this matter does not foreclose the state's jurisdictional challenge." *Volkswagen Grp. of Am., Inc.*, 2016 WL 4072342, at *2. Nor does any party dispute that federal courts have the power to consider remand motions. The relevant questions are *which* federal

court should decide the common jurisdictional question presented by Plaintiff's remand motion (and other plaintiffs' remand motions), and when it should be decided.  As the numerous authorities cited above demonstrate, in these circumstances, strong prudential considerations favor the MDL court.

In sum, this Court's precedent correctly counsels that a stay is appropriate because it will conserve judicial resources and avoid prejudice to one party, without meaningfully prejudicing the other.  If, for any reason, the JPML decides that this case does not belong in the pending MDL, then this Court may take up Plaintiff's Motion to Remand.

## II.    The Complaint States a Substantial Federal Question, and Was Properly Removed.

Plaintiff attempts to repackage its one central claim as eight different state causes of action, but at least with respect to the Distributor Defendants, the Complaint repeatedly restates the same federal question:  did the Distributor Defendants violate the DEA's suspicious order-reporting requirement, 21 C.F.R. § 1301.74(b), and a related DEA "shipping requirement," in the conduct of their business?[7]  This is conclusively a federal question, because neither obligation exists under New Mexico law.  Moreover, the federal question is not merely an "element" of Plaintiff's causes of action; rather, it undergirds every claim against the Distributor Defendants. That is more than removal requires, since "if any one claim within Plaintiffs' complaint supports federal question jurisdiction, a federal court may assert jurisdiction over all the claims, including any alleged state-law claims, arising from the same core of operative facts."  *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1235 n.8 (10th Cir. 2006).

Federal jurisdiction in this case derives from ". . . the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on

---

[7] *See, e.g.*, Compl. ¶¶163, 168, 186, 190, 198–200, 213, 331, 399, 407, 408, 412.

substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 13 (1983) ("Even though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties.").

In situations like this one, courts must consider whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 545 U.S. at 314.  Here, all factors are present, and federal jurisdiction is proper.

### A.    Plaintiffs' Complaint Necessarily Raises a Federal Issue.

"To determine whether an [a federal] issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) (quoting *Grable*, 545 U.S. at 315) (holding that federal law was necessarily raised in a state-law conversion claim premised on a disputed duty under federal Indian law).  Plaintiff observes that the mere possibility that a federal question may arise in litigating claims is not necessarily sufficient to create federal jurisdiction.  That statement may be true, but it is not relevant here, where every theory on which Plaintiff relies depends on a violation of federal law without any alternative basis to find liability against the Distributor Defendants.  *See NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1020 (2d Cir. 2014) (explaining that "we begin by considering the duty underlying each claim,"

because "[i]t is the violation of a duty that would trigger any" state-law liability); *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (holding that a state-law declaratory judgment claim "gives rise to federal-question jurisdiction" under *Grable* because it "raises a substantial federal question—the interpretation" of an Internal Revenue Code provision).

To allege breaches of duty by the Distributor Defendants, Plaintiff's 168-page Complaint essentially relies on two provisions of the New Mexico Administrative Code: 16.19.8.13 NMAC, and 16.19.20.48 NMAC.[8]  But neither provision could form the basis of the claims Plaintiff asserts, because neither provision sets forth the duties that Plaintiff alleges were breached.  Those duties are defined exclusively by federal law.

The first New Mexico provision, 16.19.8.13 NMAC, establishes requirements for the "storage and handling of prescription drugs," and "maintenance of prescription drug distribution records."  Plaintiff repeatedly cites 16.19.8.13(F) NMAC to suggest that state law contains a duty parallel to the one created by federal law, under which "[a] wholesale distributor shall have and follow [a] diversion detection and prevention plan that includes prescription drugs," and "distributors shall report any theft, suspected theft, diversion or other significant loss of any prescription drug or device to the board and where applicable, to the DEA."  This state law provision, entitled "theft or loss," clearly deals with the physical security of distributors' facilities—an issue that none of Plaintiff's eight claims against the Distributor Defendants implicates.  *Id.*  The provision does *not* create any obligation either to report or to halt suspicious

---

[8] The Complaint occasionally refers to scattered provisions of state criminal statutes which do not create federal-law-equivalent obligations for the Distributor Defendants.  NMSA 1978, § 30-31-13(A)(1) (1972), for example, discusses diversion controls among the factors that the state Board of Pharmacy considers in evaluating registration decisions.

orders, as federal DEA regulations require under some circumstances. *Id.* Plaintiff cites this provision in the hope that this Court will treat it as parallel to federal regulations, but it is not. *See, e.g.*, Compl. ¶163 (attempting to conflate 16.19.8.13(F) NMAC with 21 C.F.R. § 1301.74(b)); Mtn. to Remand at 2 (arguing that state "causes of action involve standards that parallel federal requirements").[9]

The second New Mexico provision on which Plaintiff relies, 16.19.20.48 NMAC, suffers from the same fatal defects. This provision requires registrants to "provide effective controls and procedures to guard against theft and diversion of controlled substances," 16.19.20.48(A) NMAC, and then sets forth twelve factors concerning facility security, 16.19.20.48(B) NMAC. This state law provision cannot plausibly form the basis for any of Plaintiff's claims, and stands in stark contrast to the federal provision that does. The federal CSA provision setting forth the duty that Plaintiff claims the Distributor Defendants breached requires distributors to "design and operate a system to disclose to the registrant suspicious orders of controlled substances," which "include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 21 C.F.R. § 1301.74(b). This federal duty forms the basis for each and every claim against the Distributor Defendants. *See, e.g.*, Compl. ¶168 (citing state statute that Plaintiff alleges "requires compliance with" federal regulations, and arguing that "Defendants thereby had a duty to disclose specific orders" (citing 21 C.F.R. § 1301.74(b))); *id.* ¶¶172–80 (citing DEA letters to allege state-law duties to monitor, detect, investigate, and refuse suspicious

---

[9] Similarly, although Plaintiff suggests that both federal *and* state law require the Distributor Defendants to create policies for adherence to the DEA's suspicious order reporting requirements, 16.19.8.13(I) NMAC requires only policies for "identifying, recording and reporting losses or thefts, and for correcting all errors and inaccuracies in inventories"—another measure relating to physical inventory security.

orders); *id*. ¶266 (alleging public nuisance based on "violation of [the distributors'] monitoring and reporting obligations").

It is true that the NMAC provides that "[s]ecurity requirements which meet the federal DEA provision shall be deemed adequate under New Mexico Controlled Substances Act." 16.19.20.49 NMAC. But that provision does not specify whether its scope is limited to physical security requirements, like those specifically addressed by NMAC, or to far broader federal CSA requirements that may be classified as "security"-related. In addition, 16.19.8.13(K)(2) NMAC requires that distributors "comply with all applicable state, local and DEA regulations," but provides no further guidance. In any event, a state court attempting to apply either one of these incorporation provisions would be interpreting federal, rather than state law.

In short, this case is not, as Plaintiff argues, merely one in which "a State court *could* address some issue of federal law." Mtn. to Remand at 2 (emphasis added). Instead, it is one where the federal "disputes . . . are necessary," not "merely possible." *Gully v. First Nat'l Bank*, 299 U.S. 109, 118 (1936). At least as to the Distributor Defendants, the federal questions in this case are central—not alternative—grounds for decision.

The Second Circuit's holding in *NASDAQ OMX Grp., Inc.*, directly supports this conclusion, notwithstanding Plaintiff's attempt to distinguish and brush it aside. There, the court found federal jurisdiction after applying *Grable* to state law claims involving underlying violations of federal securities rules. It noted that "even if . . . there is no dispute here as to the existence of a federal duty, . . . there is certainly a dispute as to the violation of that duty, particularly in causing UBS's injuries. Resolution of that dispute will require construction of a federal statute, rules promulgated pursuant to the statute's mandates, and the statute's

implementation by the SEC." 770 F.3d at 1021. The same is true here, and federal jurisdiction is proper for the same reasons.[10]

Plaintiff's assertion that the district court's decision in *Delaware v. Purdue Pharma L.P.*, No. 1:18-cv-00383-RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018), compels a contrary result is incorrect. That decision was premised on the court's view that the "[Delaware CSA] requirements, although not as robust as [federal CSA] requirements, are likely broad enough to encompass the allegations in the complaint and may avoid addressing the federal statute." *Id.* at *3. Regardless whether that was true in Delaware, it is certainly not true in New Mexico where, as described above, state law contains neither the federal suspicious order-reporting nor the federal shipping requirements on which Plaintiff's claims are based. This case is even less analogous to *West Virginia v. McKesson Corp.*, No. CV 16-1772, 2017 WL 357307 (S.D. W. Va. Jan. 24, 2017). Unlike New Mexico, West Virginia has separately enacted detailed Board of Pharmacy rules that bear on some of the same areas as the regulations promulgated under the federal CSA. *See id.* at *3 (discussing, *inter alia*, W. Va. C.S.R. 15-2-4.4, requiring applicants to undertake various suspicious order reporting obligations absent from New Mexico law). The analyses in these cases are not interchangeable as Plaintiff suggests, and the Complaint here necessarily raises a federal question.

### B.     The Federal Issue in The Complaint Is Actually Disputed.

The federal issue at the heart of Plaintiff's claims against the Distributor Defendants is "actually disputed," because the parties disagree as to whether the Distributor Defendants

---

[10] Plaintiff's attempt to dismiss *NASDAQ OMX Grp.* as a "split decision," Mtn. to Remand at 24–25, is unpersuasive. The decision was 2–1, lending it the same precedential force as any unanimous panel decision of a federal Court of Appeals.

violated the federal CSA.  Each of the state issues that Plaintiff's claims raise is collateral to that central dispute.

The Supreme Court has explained that a federal issue was "actually disputed" where, for example, it required "application of [federal] patent law to the facts of [the] case."  *Gunn v. Minton*, 568 U.S. 251, 259 (2013) (holding that the dispute did not satisfy the required elements for other reasons); *see id*. at 258–59 (federal issue is actually disputed when it forms a "central point of dispute").  The scope of the Distributor Defendants' obligations under the federal CSA, and whether those obligations were breached, are the central issues of this dispute.  *See, e.g.*, Compl. ¶168 (describing suspicious orders as "orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency," and citing the federal regulation from which this definition derives); *id.* ¶175 (alleging obligation to "monitor, detect, and halt suspicious orders" based on industry guidance on federal regulations).

### C.     The Federal Issue in the Complaint Is Substantial.

The federal issue centrally raised by Plaintiff's Complaint is important not just to "the particular parties in the immediate suit," but *also* "to the federal system as a whole."  *Gunn*, 568 U.S. at 260.  In particular, Plaintiff's claims all turn on whether the Distributor Defendants met obligations imposed by the federal CSA and accompanying DEA regulations.  These are questions squarely committed to the United States Attorney General, the DEA, and the federal courts, and they form critical issues in the ongoing multidistrict litigation of nearly unprecedented scale.  In short, the federal issue in this case is substantial.

The federal CSA regulates, *inter alia*, the distribution of controlled substances.  *See* 21 U.S.C. § 826 (setting forth requirements for recordkeeping and reporting in connection with controlled substances); 21 U.S.C. § 821 (vesting authority in the United States Attorney General

to enforce the federal CSA).  These laws and associated regulations form an integrated and complex federal scheme that present a substantial federal question.  *See, e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (holding that a federal question was substantial under *Grable* when it "involve[d] aspects of the complex federal regulatory scheme applicable to cable television rates").[11]

The Tenth Circuit also has explained that a state law conversion claim was substantial under *Grable* when "the legal relationship between the parties turns on whether defendants satisfied their (alleged) duties to a federal agency."  *Gilmore,* 694 F.3d at 1174 (holding that the state claim "rest[ed] on" whether the defendant had received a required regulatory approval). The same concern exists here:  Plaintiff seeks to shield its preferred interpretation of the Distributor Defendants' federal regulatory obligations from federal court review by contesting removal and couching its theories as state law claims.  This form of pleading cannot prevent federal question jurisdiction.

The Tenth Circuit also observed that a federal  issue was substantial under the *Grable* analysis when "a decision on that [federal] question would apply to a fair number of disputes." *Gilmore*, 694 F.3d at 1174 (noting the disputed issue had "generated a not insignificant number of federal court cases").  That observation undoubtedly applies here.  The federal questions at the heart of Plaintiff's claims against the Distributor Defendants are the primary common element

---

[11] Plaintiff attempts to distinguish *Broder* because it "says *nothing about* prescription drugs" and sought a declaratory judgment concerning federal law.  Pl.'s Mot. to Remand at 24 (emphasis in original).  This is a distinction without a relevant difference.  The regulatory scheme governing prescription drugs is certainly no less "complex" than the one governing cable television.  More importantly, the claims at issue in the *Broder* removal were for breach of contract, violation of New York's General Business Law, common-law fraud, and unjust enrichment.  418 F.3d at 192–93.  There, as here, the state claims ultimately depended on interpreting federal law, and they were properly removed.

among more than 700 pending lawsuits consolidated in the MDL before Judge Polster in the Northern District of Ohio.  Their consistent resolution is important to the federal system. Permitting Plaintiff to seek separate—and quite possibly divergent—determinations of  the Distributor Defendants' federal CSA obligations in state court would significantly undermine the rationale behind federal question jurisdiction, and this Court should reject Plaintiff's attempt to do so here.

### D. Permitting a Federal Court to Decide the Boundaries of Federal Law Maintains the Federal-State Balance.

This case may be heard in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.  Indeed, maintaining the appropriate balance between state and federal interests not only permits, but compels, this case to be heard in federal court.

In enacting the federal CSA, congressional drafters explained that they were "providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control." H.R. Rep. No. 91-1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4572.  The U.S. Attorney General "is authorized to promulgate rules and regulations and to charge reasonable fees relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances," 21 U.S.C. § 821, the "district courts of the United States . . . shall have jurisdiction in proceedings in accordance with the Federal Rules of Civil Procedure to enjoin violations of [21 U.S.C. §§ 801–904]," *id.* § 882(a), and inconsistent state laws are preempted, *id.* § 903. Critically, federal district courts have exclusive jurisdiction to enjoin violations of the federal CSA and there is no private right of action to enforce the law.  *See, e.g.*, *Jones v. Hobbs*, 745 F.

Supp. 2d 886, 890 (E.D. Ark. 2010) (citing 21 U.S.C. § 882(a)).[12]  Nevertheless, Plaintiff seeks state-law injunctive relief premised on violations of this very law.  *See, e.g.*, Compl. ¶276 (seeking injunctive relief under public nuisance claim); *id.* ¶308 (seeking injunctive relief and abatement under the New Mexico Unfair Practices Act); *id.* ¶323 (seeking injunctive relief under New Mexico Medicaid Fraud Act); *id.* ¶454 (seeking injunctive relief under negligence claim); *id.* ¶462 (seeking injunctive relief under negligence per se claim).  Permitting state claims to circumvent this federal choreography, where the state has not promulgated a parallel regulation beyond what federal law already provides, risks disrupting the federal-state balance that *Gunn* sought to protect.

Contrary to Plaintiff's argument, there is no "sovereign protection" requiring remand merely because "a State filed a case in state court."  Pl.'s Mot. to Remand at 26.  Where a State asserts federal questions, that case may be removed like any other.  Cases cited by Plaintiff do not upset this conclusion.  The Supreme Court's footnote in *Franchise Tax Board*, quoted throughout Plaintiff's arguments, has no bearing on this case.  That footnote remarks that "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it."  *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 21 n.22.  But *Franchise Tax Board* concerned an attempt to assert federal jurisdiction via a defense of federal preemption, *id.* at 13–14, and a novel question concerning the scope of the Declaratory Judgment Act, *id.* at 18–19.  Neither situation bears on this case.  Likewise, *West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169, 178 (4th Cir. 2011) was interpreting

---

[12] As the Supreme Court explained in *Grable*, the lack of a private cause of action does nothing to preclude federal subject matter jurisdiction.  *Grable*, 545 U.S. at 316.  And in this context, it shows the extent to which congress imposed structural limitations on what fora are appropriate for litigating parties' obligations under the CSA.

the Class Action Fairness Act ("CAFA") in its assessment of whether that state's attorney general had brought a "case of national importance." *Id.* (quoting CAFA, Pub. L. No. 109–2 § 2(b)(2)).  The same was true of *New Hampshire v. Purdue Pharma*, No. 17-cv-427-PB, 2018 WL 333824 (D. N.H. Jan. 9, 2018), which did not involve any distributor and which analyzed removal under CAFA.  Neither case sheds light on this dispute.

This case was properly removed to federal district court because it presents a substantial federal question.  That federal question is necessarily raised, actually disputed, and substantial, and litigating it in federal court will not disrupt the federal-state balance.

## III.   The Complaint Facially Pleads a Federal Question, Independently Justifying Removal.

Federal question jurisdiction is independently proper in this case because the Complaint facially pleads a cause of action under the federal CSA.  "[W]hether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded-complaint rule."  *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.,*  535 U.S. 826, 830 (2002).  Here, the Complaint repeatedly cites federal law as the source of the duty underlying each of its claims.  Even in those claims purportedly grounded in state law, any liability arises solely from federal law; without the importation of federal duties, Plaintiff could not state causes of action at all.  As a result, these federal claims appear "on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Each claim against the Distributor Defendants depends on an alleged violation of the federal duty to report or halt suspicious orders of opioid products.  As noted, these obligations do not derive from state law.  As described in the Notice of Removal [Doc. 1], Plaintiff attempts to couch these federal allegations in state causes of action:

- Count I relies on allegations about the Distributor Defendants' "monitoring and reporting obligations." Compl. ¶266;

- Count II alleges that the Distributor Defendants failed to "maintain a closed distribution system, . . . and specifically monitor, investigate, report, and refuse suspicious orders." *Id.* ¶285;

- Count III alleges that the Distributor Defendants "misrepresented their compliance with their legal obligations to maintain a closed system," and "failed to maintain effective controls against diversion of opioids and failed to monitor, detect and report suspicious orders of prescription opioids." *Id.* ¶315;

- Counts IV and V allege that the Distributor Defendants violated the New Mexico Racketeering Act and engaged in a racketeering conspiracy by, *inter alia*, "systematically and fraudulently violat[ing] their duty under New Mexico law to maintain effective controls against diversion of their drugs, . . . to halt unlawful sales of suspicious orders, and to notify the DEA, the New Mexico Board of Pharmacy, and the FDA of suspicious orders." *Id.* ¶331 (citing 21 U.S.C. § 823(a)(1), (b)(1); 21 C.F.R. § 1301.74(b)–(c)); *id.* ¶420 (incorporating Count IV);

- Count VI alleges that the Distributor Defendants violated the Fraud Against Taxpayers Act by misrepresenting "that they were operating a closed system safeguarding against diversion of dangerous opioids into illicit channels, when, in truth, the Distributor Defendants were ignoring their legal duties for profit." *Id.* ¶434;

- Count VII alleges that the Distributor Defendants are negligent for breaching a duty arising from "the system whereby wholesale distributors are the gatekeepers between

manufacturers and pharmacies[, which] exists for the purpose of controlling dangerous substances such as opioids." *Id.* ¶447; and

- Count VIII alleges that the Distributor Defendants are negligent per se because they breached a duty "to prevent diversion of prescription opioids for non-medical and non-scientific purposes and to guard against, prevent, and report suspicious orders of opioids." *Id.* ¶456.

Plaintiff may not avoid stating federal causes of action merely by arguing that the federal CSA "does not create a federal cause of action," or that "the Act expressly saves state laws." Pl.'s Mot. to Remand at 13. Even when a plaintiff purports to allege only state-law claims, if the sole basis for its allegations is federal law, then a federal question exists nonetheless. *See, e.g.*, *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 722 (D. Md. 2001) (holding complaint stated federal question although it contained only state-law claims, because when class allegations rested on Sherman Act violations, "[t]here [was] no evident purpose for such allegations unless plaintiffs contemplate the assertion of [federal] claims").[13]

In sum, this case "'aris[es] under' federal law within the meaning of § 1331," because the "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd.*, 463 U.S. at 27–28). This Court should not countenance Plaintiff's attempt to evade federal jurisdiction by pleading federal violations under the guise of state-law claims.

---

[13] As noted above, if the Court decides that some, but not all, of Plaintiff's claims state a federal question, then this Court "may assert jurisdiction over all the claims, including any alleged state-law claims, arising from the same core of operative facts." *Nicodemus*, 440 F.3d at 1236 n.8.

## CONCLUSION

The Complaint raises complex issues concerning the application of federal controlled substances law to the participants in the pharmaceutical supply chain.  A pending MDL involves claims virtually identical to those in the Complaint, against each one of the defendants in this case.  Plaintiffs in the MDL include cities, counties, *and* state attorneys general, among others. Rather than ordering the parties to re-litigate those same issues in a redundant forum, this Court should—consistent with its precedent—permit the MDL judge to consider Plaintiff's remand motion, alongside other, virtually identical motions.  If the Court determines that it must reach Plaintiff's remand motion, that motion should be denied.

Respectfully submitted,

/s/ Larry D. Maldegen
Larry D. Maldegen
Michael J. Moffett
**MALDEGEN, TEMPLEMAN &**
**INDALL, LLP**
P.O. Box 669
Santa Fe, NM 87504-0669
(505) 982-4611
lmaldegen@cmtisantafe.com
mmoffett@cmtisantafe.com

Neil K. Roman*
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
nroman@cov.com

Megan L. Rodgers*
**COVINGTON & BURLING LLP**
333 Twin Dolphin Drive
Redwood Shores, CA 94065
(650) 632-4734

21

mrodgers@cov.com

Megan A. Crowley*
Blake B. Hulnick*
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
mcrowley@cov.com
bhulnick@cov.com

*\* denotes national counsel who will seek
pro hac vice admission*

*Counsel for Defendant, McKesson
Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing is being served upon the following by electronic mail:

| | |
|---|---|
| Hector H. Balderas, Attorney General<br>Brian E. McMath<br>Cholla Khoury<br>State of New Mexico<br>OFFICE OF THE ATTORNEY GENERAL<br>P.O. Drawer 1508<br>Santa Fe, NM 87504-1508<br>hbalderas@nmag.gov<br>bmcmath@nmag.gov<br>ckhoury@nmag.gov<br><br>Russell W. Budd<br>Laura J. Baughman<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX 75219<br>(214) 521-3605<br>rbudd@baronbudd.com<br>lbaughman@baronbudd.com<br><br>Luis Robles<br>Marcus J. Rael, Jr.<br>ROBLES, RAEL & ANAYA, P.C.<br>500 Marquette Ave., NW, Suite 700<br>Albuquerque, New Mexico 87102<br>(505) 242-2228<br>luis@roblesrael.com<br>marcus@roblesrael.com<br><br>*Attorneys for Plaintiff* | Walter J. Melendres<br>Randy S. Bartell<br>MONTGOMERY & ANDREWS<br>325 Paseo de Peralta<br>Santa Fe, NM 87501<br>(505) 982-3873<br>wmelendres@montand.com<br>rbartell@montand.com<br><br>Mark S. Cheffo*<br>Hayden A. Coleman*<br>Mara C. Cusker Gonzalez*<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>(212) 849-7000<br>markcheffo@quinnemanuel.com<br>haydencoleman@quinnemanuel.com<br>maracuskergonzalez@quinnemanuel.com<br><br>*Attorneys for Defendants* PURDUE PHARMA L.P., PURDUE PHARMA INC., and THE PURDUE FREDERICK COMPANY INC. |

| | |
|---|---|
| Steven A. Reed<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA 19103<br>(215) 963-5000<br>steven.reed@morganlewis.com<br><br>Wendy West Feinstein<br>MORGAN, LEWIS & BOCKIUS LLP<br>One Oxford Centre, 32nd Floor<br>Pittsburgh, PA 15219-6401<br>(412) 560-7455<br>wendy.feinstein@morganlewis.com<br><br>Brian M. Ercole<br>MORGAN, LEWIS & BOCKIUS LLP<br>200 S. Biscayne Blvd., Suite 5300<br>Miami, FL 33131<br>(305) 415-3416<br>brian.ercole@morganlewis.com<br><br>*Attorneys for Defendants TEVA PHARMACEUTICAL INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., CEPHALON, INC., WATSON LABORATORIES, INC., ACTAVIS LLC, and ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.* | Benjamin Allison<br>Justin Miller<br>BARDACKE ALLISON LLP<br>141 E. Palace Avenue, 2d Floor<br>Santa Fe, NM 87501<br>(505) 995-8000<br>ben@bardackeallison.com<br>justin@bardackeallison.com<br><br>Charles C. Lifland<br>O'MELVENY & MYERS LLP<br>400 S. Hope Street<br>Los Angeles, CA 90071<br>(213) 430-6000<br>clifland@omm.com<br><br>*Attorney for Defendants JOHNSON & JOHNSON, JANSSEN PHARMACEUTICALS, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC., and JANSSEN PHARMACEUTICA INC. n/k/a JANSSEN PHARMACEUTICALS, INC.* |

| | |
|---|---|
| Daniel G. Jarcho<br>ALSTON & BIRD LLP<br>The Atlantic Building<br>950 F Street, NW<br>Washington, DC 20004<br>(202) 239-3254<br>daniel.jarcho@alston.com<br><br>Cari K. Dawson<br>ALSTON & BIRD LLP<br>One Atlantic Center<br>1201 West Peachtree Street, Suite 4900<br>Atlanta, GA 30309<br>(404) 881-7766<br>cari.dawson@alston.com<br><br>*Attorneys for Defendant NORAMCO, INC.* | John B. Pound (N.M. Bar No. 2101)<br>JOHN B. POUND LLC<br>505 Don Gaspar<br>Santa Fe, NM 87505<br>(505) 983-8060<br>jbpsfnm@gmail.com<br><br>John D. Lombardo<br>Sean O. Morris<br>S. Albert Wang<br>Tiffany M. Ikeda<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>777 S. Figueroa Street<br>44th Floor<br>Los Angeles, CA 90017<br>(213) 243-4000<br>John.Lombardo@arnoldporter.com<br>Sean.Morris@arnoldporter.com<br>S.Albert.Wang.@arnoldporter.com<br>Tiffany.Ikeda@arnoldporter.com<br><br>*Attorneys for Defendants ENDO HEALTH SOLUTIONS INC., and ENDO PHARMACEUTICALS INC.* |

| | |
|---|---|
| Timothy C. Holm<br>MODRALL SPERLING, ROEHL, HARRIS & SISK, P.A.<br>P.O. Box 2168<br>Albuquerque, NM 87013-2168<br>(505) 848-1800<br>tch@modrall.com<br><br>Brien T. O'Connor<br>Andrew J. O'Connor<br>ROPES & GRAY LLP<br>Prudential Tower,<br>800 Boylston Street<br>Boston, MA 02199-3600<br>(617) 235-4650<br>Brien.O'Connor@ropesgray.com<br>Andrew.O'Connor@ropesgray.com<br><br>*Attorney for Defendants MALLINCKRODT PLC, and MALLINCKRODT LLC* | J. Matthew Donohue<br>Joseph L. Franco<br>HOLLAND & KNIGHT LLP<br>2300 U.S. Bancorp Tower<br>111 S.W. Fifth Avenue<br>Portland, OR 97204<br>(503) 517-2913<br>Matt.Donohue@hklaw.com<br>Joe.Franco@hklaw.com<br><br>*Attorneys for Defendant INSYS THERAPEUTICS, INC.* |

| | |
|---|---|
| Andrew G. Schultz<br>RODEY LAW FIRM<br>P.O. Box 1888<br>Albuquerque NM 87103<br>Telephone: (505) 768-7205<br>Facsimile: (505) 768-7395<br>aschultz@rodey.com<br><br>*Attorney for Defendants CARDINAL HEALTH INC., CARDINAL HEALTH 105, LLC, CARDINAL HEALTH 108, LLC, CARDINAL HEALTH 110, LLC, CARDINAL HEALTH 200, LLC, CARDINAL HEALTH 414, LLC, and CARDINAL HEALTH PHARMACY SERVICES, LLC* | Douglas A. Baker<br>ATKINSON, BAKER & RODRIGUEZ, P.C.<br>201 Third St. NW, Suite 1850<br>Albuquerque, NM 87102<br>Telephone: (505) 764-8111<br>Facsimile: (505) 764-8374<br>dbaker@abrfirm.com<br><br>Robert A. Nicholas<br>Shannon E. McClure<br>REED SMITH LLP<br>1717 Arch Street, Suite 3100<br>Philadelphia, PA 19103<br>(215) 851-8100<br>rnicholas@reedsmith.com<br>smcclure@reedsmith.com<br><br>Alvin L. Emch<br>JACKSON KELLY PLLC<br>500 Lee Street, East, Suite 1600<br>P.O. Box 553<br>Charleston, WV 25322<br>(304) 340-1000<br>aemch@jacksonkelly.com<br><br>*Attorneys for Defendant AMERISOURCEBERGEN DRUG CORPORATION* |

Donna M. Welch, P.C.
Martin L. Roth
Timothy W. Knapp
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000
donna.welch@kirkland.com
martin.roth@kirkland.com
timothy.knapp@kirkland.com

Jennifer G. Levy, P.C.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000
jennifer.levy@kirkland.com

Eric R. Burris
BROWNSTEIN HYATT FARBER
SCHRECK LLP
201 Third Street NW
Suite 1800
Albuquerque, New Mexico 87102-4386
Telephone: 505.724.9563
Facsimile: 505.244.9266
EBurris@BHFS.com

*Attorneys for Defendants ALLERGAN*
*FINANCE, LLC f/k/a ACTAVIS, INC. f/k/a*
*WATSON PHARMACEUTICALS, INC. and*
*ALLERGAN PLC f/k/a ACTAVIS PLC*

May 15, 2018                          */s/ Larry D. Maldegen*
                                      Larry D. Maldegen

                                      *Attorney for Defendant McKesson Corporation*

28