IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*,
HECTOR BALDERAS, ATTORNEY
GENERAL,

        Plaintiff,

v.                                                       No. 1:18-cv-00386-JCH-KBM

PURDUE PHARMA L.P.; PURDUE
PHARMA, INC.; THE PURDUE FREDERICK
COMPANY, INC.; TEVA PHARMACEUTICAL
INDUSTRIES USA, INC.; CEPHALON, INC.;
JOHNSON & JOHNSON; JANSSEN
PHARMACEUTICALS, INC.; ORTHO-
MCNEIL-JANSSEN PHARAMACEUTICALS, INC.
n/k/a JANSSEN PHARMACEUTICALS, INC.;
JANSSEN PHARMACEUTICA INC. n/k/a
JANSSEN PHARMACEUTICALS, INC.;
NORAMCO, INC.; ENDO HEALTH SOLUTIONS INC.;
ENDO PHARMACEUTICALS, INC.; ALLEGRAN
PLC f/k/a ACTAVIS PLC; WATSON
PHARMACEUTICALS, INC. n/k/a ACTAVIS, INC.;
WATSON LABORATORIES, INC.; ACTAVIS LLC;
ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.;
MALLINCKRODT PLC; MALLINCKRODT LLC;
INSYS THERAPEUTICS, INC.; McKESSON
CORPORATION; CARDINAL HEALTH INC.;
CARDINAL HEALTH 105, LLC; CARDINAL
HEALTH 108, LLC; CARDINAL HEALTH
110, LLC; CARDINAL HEALTH 200, LLC;
CARDINAL HEALTH 414, LLC; CARDINAL
HEALTH PHARMACY SERVICES, LLC; and
AMERISOURCEBERGEN DRUG CORP.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Distributor Defendants' Joint Motion to Stay Pending Ruling by the Judicial Panel on Multidistrict Litigation [Doc. 5]; Plaintiff's Motion to

Remand [Doc. 10]; and Plaintiff's Motion to Expedite Briefing on its Motion to Remand [Doc. 11]. After careful consideration of the motions, briefs, and relevant law, the Court concludes that Plaintiff's Motion to Remand should be granted, and that the remaining motions should be denied as moot.

**I.     BACKGROUND**

Plaintiff State of New Mexico *ex rel.* Hector Balderas, Attorney General, filed this lawsuit in the First Judicial District of the State of New Mexico against manufacturers and wholesale distributors of prescription opioids, alleging that Defendants improperly marketed and distributed prescription opiate medications nationwide. According to Plaintiff's First Amended Complaint (Complaint) McKesson Corporation and other Distributor Defendants[1] habitually failed to monitor, report, investigate, and refuse suspicious orders[2] for prescription opioids originating from New Mexico in violation of the New Mexico Controlled Substances Act and the federal Controlled Substances Act (FCSA), resulting in the diversion of these drugs into non-medical, illicit channels. Plaintiff's Complaint alleges that Defendants are liable on eight counts: public nuisance under N.M. Stat. Ann. § 30-8-8-1 and New Mexico's common law (Count I); violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -26 (Count II); violation of New Mexico's Medicare Fraud Act, N.M. Stat. Ann. §§ 30-44-1 to -8 (Count III); violation of New Mexico's Racketeering Act, N.M. Stat. Ann. §§ 30-42-1 to -6 (Count IV); conspiracy to violate New Mexico's Racketeering Act (Count V); violation of New Mexico's Fraud Against Taxpayers Act, N.M. Stat. Ann. §§ 44-9-1 to -14 (Count VI); negligence (Count

---

[1] McKesson Corporation; Cardinal Health Inc.; Cardinal Health 105, LLC; Cardinal Health 108, LLC; Cardinal Health 110, LLC; Cardinal Health 200, LLC; Cardinal Health 414, LLC; Cardinal Health Pharmacy Services, LLC and Amerisourcebergen Drug Corporation.

[2] According to Plaintiff's Complaint, the term "suspicious orders" refers to orders of prescription opioids characterized by their unusual size or frequency, or orders that deviate from a normal ordering pattern. *See* Compl. ¶ 169, Doc. 1-2.

VII); and negligence *per se* (Count VIII). The Complaint alleges that Defendants' conduct exacted a huge financial burden on the State of New Mexico, and Plaintiff seeks various damages against Defendants for their alleged role in igniting an opioid epidemic. In addition to seeking temporary and permanent injunctions, various statutory damages and attorneys' fees, Plaintiff requests past and future damages for

> (A) money wrongfully paid for opioids through government-funded insurance; (B) costs for providing medical care, additional therapeutic care and prescription drug purchases, and other treatments for patients suffering from opioid-related addiction or disease, including overdoses and deaths; (C) costs for providing treatment, counseling, and rehabilitation services; (D) costs for providing treatment of infants born with opioid-related medical conditions; (E) costs for providing welfare for children whose parents suffer from opioid-related disability or incapacitation; and (F) costs associated with law enforcement and public safety relating to the opioid epidemic.

Compl., Prayer for Relief, ¶ 9.

McKesson filed a notice of removal in this Court, asserting that because Defendants' "duties governing reporting and shipping 'suspicious' orders [] arise solely from the federal Controlled Substances Act," this Court has federal jurisdiction over Plaintiff's Complaint under the FCSA. Notice of Removal, Doc. 1, ¶¶ 8, 16. In its Motion to Remand, Plaintiff argues that its 167-page Complaint does not allege any federal claims. Indeed, Plaintiff contends that the Complaint explicitly disavows all federal causes of action, *see e.g.* Compl. ¶ 47, ("federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 is not invoked by the Complaint … nowhere herein does Plaintiff plead … any cause of action or request any remedy that arises under federal law.") Plaintiff also claims that, despite the Complaint's references to federal law and regulations that are incorporated into various analogous New Mexico laws and regulations, the Complaint does not rely on federal law to generate a cause of action. *See id.* ¶ 48 ("In this complaint, Plaintiff cites federal statutes and regulations. Plaintiff does so to state the

duty owed under New Mexico tort law, *not* to allege an independent federal cause of action and *not* to allege any substantial federal question ….")

Plaintiff explains in its Motion to Remand that New Mexico law "parallels" federal law applicable to manufacturer and wholesale drug distributors, and that in order to comply with state law, Defendants must also comply with federal law. The Complaint describes some state law duties that incorporate federal standards, or require compliance with both New Mexico and federal law. For instance, the Complaint explains how "[t]he [NMCSA] and Administrative Code incorporate by reference relevant federal laws and regulations." Compl. ¶ 162 (citing N.M. Code R. § 16.19.8.13(I) and N.M. Stat. Ann, §§ 30-31-13(C), 30-31-16(A)). Further, "wholesale drug distributors shall operate in compliance with applicable federal, state , and local laws and regulations" and "[w]holesale drug distributors that deal in controlled substances shall register with the [New Mexico Board of Pharmacy] and with the [federal Drug Enforcement Agency]." Compl. ¶ 162 (citing N.M. Code. R. § 16.19.8.13(I) & (I)(2)). The same rules require that "any diversion of a prescription drug be reported to the New Mexico Pharmacy Board, the FDA, and … the DEA" and that this same duty exists under federal regulations, which are incorporated by reference." Compl. ¶ 163 (citing N.M. Code. R. § 16.19.8.13(I) & (F)(5); §§ 30-31-13(C), 30-31-16(A)). Plaintiff's Complaint also cites New Mexico regulations that require the Distributor Defendants to guard against and report "diversion" of prescription opioids. For example, under N.M. Code. R. § 16.19.8.13(F) "[w]holesale distributors shall report any theft, suspect theft, diversion or other significant loss of any prescription drug … to the board …." And under N.M. Code. R. § 16.19.20.48(A) distributors and manufacturers "shall provide effective controls and procedures to guard against theft and diversion of controlled substances." *See* Compl. ¶¶ 161, 163.

Plaintiff's Complaint also alleges that two DEA letters, written in 2006 and 2007, reminded registered wholesale distributors such as Distributor Defendants of "their statutory and regulatory duties" to monitor and report suspicious orders of controlled substances. Compl. ¶¶ 167, 172, 173. The letters explained to the Distributor Defendants that they represented "one of the key components of the distribution chain," and that "[i]f the closed system is to function properly … distributors must be vigilant in deciding whether a prospective customer can be trusted to deliver controlled substances only for lawful purposes." *Id*. ¶ 167. The 2006 letter stated that "a distributor has a statutory responsibility to exercise due diligence to avoid filling suspicious orders" that could find their way into illicit channels. *Id.* ¶ 172. And the 2007 letter reminded distributors to "maintain effective controls against diversion" and "design and operate a system to disclose to the registrant suspicious orders." *Id.* ¶ 173.

McKesson responds that all of Defendants' duties to monitor for, report, and refuse suspicious orders for prescription opioids arise *solely* under the FCSA and its implementing regulations. *See* Notice of Removal, ¶ 8. Specifically, Defendants' duty to disclose suspicious orders derives from a federal regulation, 21 C.F.R. § 1301.74(b), and McKesson argues that Plaintiff identified no "provision of New Mexico law or regulation that contains a requirement analogous to the federal CSA's suspicious order-reporting requirement." *Id*. ¶ 22 n. 4. Concerning the Drug Distributor's duty to not ship suspicious orders, McKesson does not argue that the FCSA itself imposes such a duty. Rather, according to McKesson "[t]he source of the asserted legal duty to suspend shipments of suspicious orders" arises from an interpretation of the FCSA by the DEA in the 2006 and 2007 letters. *Id*. ¶ 38. McKesson argues that although Plaintiff's claims are packaged as state law negligence, fraud, public nuisance, unfair practices, and racketeering claims, each claim is predicated upon disclosure and shipping duties arising

only under federal law. *See* Def.'s Resp. to Mot. to Remand, p. 8 ("the Complaint repeatedly restates the same federal question: did the Distributor Defendants violate the DEA's suspicious order-reporting requirement, 21 C.F.R. § 1301.74(b), and a related DEA 'shipping requirement' [i.e. the 2006 and 2007 DEA letters].'") McKesson thus argues that this Court has subject matter jurisdiction because Plaintiff pleads facially federal claims in Counts I-VII, and that all of Plaintiffs claims depend on a substantial federal question – namely, the meaning and application of the FCSA, its implementing regulations, and the DEA letters.

## II. PROCEEDINGS

In the background of this case is a Judicial Panel on Multidistrict Litigation (JPML) that formed a multidistrict litigation (MDL) arising from nationwide lawsuits addressing similar issues raised in this case. On December 7, 2017 the JPML centralized proceedings in the United States District Court for the Northern District of Ohio before the Honorable Dan A. Polster. On April 26, 2018, the day after McKesson filed its Notice of Removal, Defendant Cardinal Health Entities filed a tag-along notice with the JPML requesting that this case be transferred to the MDL proceedings in the Northern District of Ohio. Plaintiff objected to transfer before the JPML, and the parties will finalize arguments and briefing before the Panel on June 12, 2018. McKesson has advised this Court that the Distributor Defendants expect that, as a matter of course, in two or three months the JPML will issue an order conditionally transferring this case to the MDL proceeding, and therefore request a stay of all proceedings in this Court until the JPML makes a decision.[3] In his first Case Management Order, Judge Polster placed a

---

[3] This Court's ability to rule on Plaintiff's motion to remand is unaffected by any possible conditional transfer of this case to the MDL proceeding. *See* J.P.M.L. Rule of Procedure 2.1(d) (stating that "[t]he pendency of a motion … conditional transfer order … before the Panel … does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court.").

moratorium on various motions, except for State remand motions. McKesson argues that Plaintiff will have a federal forum before Judge Polster to argue its motion to remand, and therefore Plaintiff would not be prejudiced by staying proceedings until this case is transferred as a matter of course to Ohio. Plaintiff counters that Judge Polster has yet to develop a procedure addressing State remand motions, and that "bounc[ing]" this case "between federal courts lacking subject matter jurisdiction" would result in needless delay and waste judicial resources. Pl.'s Resp. to Mot. to Stay 8, Doc. 24.

### III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Removal statutes are to be strictly construed, and the party invoking federal jurisdiction bears the burden of proof with a presumption against federal jurisdiction. *See Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). Any doubts regarding subject matter jurisdiction are to be resolved against removal. *See Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982). In its notice of removal, McKesson argues that two statutory provisions confer federal jurisdiction: 28 U.S.C. § 1331 and 28 U.S.C. § 1441. *See* Notice of Removal 5. Section 1441(a) permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Section 1331, the "general federal-question statute," *Michigan v. Bay Mills Indian Cmty.,* ––– U.S. ––––, 134 S.Ct. 2024, 2030 n. 2 (2014), gives district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." A case improperly removed to federal court must be remanded to state court. *See* 28 U.S.C. § 1447.

Section 1331 "is invoked by and large by plaintiffs pleading a cause of action created by federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312

7

(2005). However, causes of action under state law may nonetheless "arise under" federal law for purposes of § 1331 even when the complaint does not explicitly plead a federal cause of action if the four-pronged *Grable* test is met. Under that test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn,* 568 U.S. at 258. Supreme Court decisions since *Grable* have suggested that *Grable*'s recognition of jurisdiction absent a federal cause of action is of limited scope, noting that only a "slim category" of cases satisfy the four-prong *Grable* test. *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 701 (2006). The Supreme Court has stressed that "it takes more than a federal element to open the arising under door," *id.*, and that mere allegations of a "federal issue" are not a "password opening federal courts to any state action embracing a point of federal law." *Grable*, 545 U.S. at 314. Thus the "mere presence" of a federal issue in a state cause of action and the "mere assertion of a federal interest" are not enough to confer federal jurisdiction. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). On the other hand, a plaintiff cannot avoid federal subject matter jurisdiction by declining to plead "necessary federal questions." *Rivet v. Regions Bank,* 522 U.S. 470, 475 (1998).

To better contextualize this case, the Court briefly recounts some of the Supreme Court's seminal decisions analyzing jurisdiction under § 1331 based on the presence of a federal element in a state law claim. In *Merrell Dow*, in two state tort law actions, the plaintiffs alleged that the defendants misbranded a drug in violation of the Federal Food, Drug, and Cosmetic Act, which created a rebuttable presumption of negligence under Ohio law. Thus, within a state law negligence claim was a federal issue about the interpretation and application of the FDCA. The defendant removed the actions, but the Supreme Court held the removal improper because the

case did not arise under federal law within the meaning of § 1331. The plaintiffs' right to relief did not necessarily depend on a resolution of federal law, the Court held, since the "[p]laintiffs' causes of action referred to the FDCA merely as one available criterion for determining whether Merrell Dow was negligent. Because the jury could find negligence on the part of Merrell Dow without finding a violation of the FDCA, the plaintiffs' causes of action did not depend necessarily upon a question of federal law." *Merrell Dow*, 478 U.S. at 807.

In *Gunn*, the Court readdressed somewhat similar issues raised in *Merrell Dow* – namely, whether a state law tort action in which the defendant's negligence turned on an issue of federal law conferred federal jurisdiction. The federal law in *Gunn* was patent law. The plaintiff sued for patent infringement, lost, and then sued his lawyer for legal malpractice in Texas state court for mishandling the patent case. Because his legal malpractice claim was predicated on the underlying patent case, the plaintiff argued that his case should have been brought in federal rather than state courts (because federal courts have exclusive jurisdiction over patent law under 28 U.S.C. § 1338(a)). A unanimous Supreme Court disagreed. The plaintiff's malpractice claim – although it would necessarily require a state court to examine federal patent law – was not substantial to the federal patent law system as a whole since a state court's analysis of federal patent law would not bind federal courts.

In contrast to *Merrell Dow* and *Gunn*, the Court's case in *Grable* fell within the "slim category" of cases where the Court upheld removal jurisdiction over a state law claim that incorporated a federal element because that element implicated substantial federal interests – namely, the federal tax code. In its state law quiet title action, the plaintiff in *Grable* alleged that it had superior title to real property that the Internal Revenue Service had seized to satisfy a tax delinquency because the IRS failed to follow the federal notice statute before the seizure.

Because the plaintiff's claim of superior title turned on whether it was given adequate notice, the federal notice statutes were "an essential element of its quiet title claim." *Grable*, 545 U.S. at 315. Moreover, federal jurisdiction embraced the plaintiff's state law quite title action because the embedded federal element was substantial to the federal system as a whole: "[t]he meaning of the federal tax provision" and the government's interest in satisfying its tax claims and to provide secure title to purchasers at tax sales. *Id*. The IRS agency action presented "a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax sale cases," and thus "sensibly belonged in federal court." *Empire*, 547 U.S. at 700.

## IV. DISCUSSION

### a. Whether Plaintiff's Claims Facially Arise under Federal Law

McKesson claims that Plaintiff's claims facially arise under federal law because Defendants' manufacturing quotas and duties regarding reporting and shipping suspicious opioid orders arise "solely" from the FCSA and its implementing regulations. *See* Notice of Removal ¶ 8. Thus, McKesson argues that "[f]ederal question jurisdiction is independently proper in this case because the Complaint facially pleads a cause of action under the federal CSA." Def.'s Resp. 24. However, Plaintiff's Complaint does not allege a federal cause of action under the FCSA – nor could it have because the FCSA provides no federal cause of action. *See Zink v. Lombardi*, 783 F.3d 1089, 1113 (8th Cir. 2015) ("[The plaintiffs] acknowledge, however, that there is no private right of action under federal law to enforce these alleged violations [of the Controlled Substances Act]."); *Durr v. Strickland*, 602 F.3d 788, 789 (6th Cir. 2010) (same). Because Plaintiff's Complaint has not pleaded a non-existent federal cause of action under the FCSA, federal jurisdiction will lie only if the state law claims implicate substantial federal issues. *See Grable*, 545 U.S. at 312.

### b. Whether Plaintiff's Complaint Raises a Substantial Federal Issue

Thus, in order to establish removal jurisdiction Defendants must satisfy the four-prong test in *Grable*. Turning to the second prong first, in its briefing Plaintiff made no substantive arguments about whether the federal issues in its Complaint are "actually disputed," and thus the Court presumes the parties agree the second factor is met. But the parties do quarrel about whether the other three factors derived from *Grable* are satisfied, so the Court will analyze those components. The first factor that Defendants must show is that a federal issue is "necessarily raised" in Plaintiff's Complaint, meaning that "the issue is an 'essential element' of a plaintiff's claim." *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012). McKesson argues that all of Plaintiff's claims depend necessarily on a purportedly federal issue – whether the Distributor Defendants violated the DEA's suspicious order-reporting requirement (21 C.F.R. § 1301.74(b)), and related DEA shipping requirement as spelled out in the 2006 and 2007 DEA letters.

The Court first addresses McKesson's arguments concerning the DEA letters. As noted earlier, McKesson locates the source of a duty to suspend shipments not in the FCSA itself, but in interpretations of the FCSA by the DEA in the 2006 and 2007 letters. Those letters are cited in Plaintiff's Complaint, and Plaintiff relies on them to show that the DEA "warned" and "reminded" distributors to not fill suspicious orders. In a recent opioid related lawsuit brought by the State of West Virginia, McKesson unsuccessfully removed the State's case to federal court on the basis that these same DEA letters alone imposed a duty on it to not fill suspicious orders. *See State of West Virginia ex rel. Morrisey v. McKesson Corp.*, No. 16-1773, 2017 WL 357307, at *4 (S.D.W. Va.. Jan. 24, 2017). The court called into question whether these letters had "any binding effect upon distributors," especially since McKesson itself "concede[d] that [they] were not binding." *Id*. at *8. The court noted that whatever relevancy the letters had, "their guidance

11

may of course be marshalled in support of particular allegations," but that the State's claims did not necessarily hinge on any putative duty owed under the letters since the State alleged numerous other state law duties. *Id*.

Here, Plaintiff's Complaint cites the DEA letters to show that the DEA reminded and warned the Distributor Defendants of their statutory duties. However, like West Virginia's complaint in *Morrisey*, Plaintiff's claims stretch beyond the DEA letters to include state law duties applicable to prescription drug distributors – for instance to "report any theft, suspect theft, diversion or other significant loss of any prescription drug" to the New Mexico Board of Pharmacy, N.M. Code R. § 16.19.8.13(F), and to "provide effective controls and procedures to guard against theft and diversion of controlled substances." N.M. Code R. § 16.19.20.48(A). McKesson argues that these two regulations in particular contain no requirement compelling the Distributor Defendants to halt suspicious orders on which Plaintiff's claims are allegedly based. However, Plaintiff's claims are not predicated exclusively on a duty to halt suspicious orders. The Complaint alleges that the Distributor Defendants had a duty also to monitor, detect, investigate, and refuse suspicious orders of opioids. *See e.g.* Compl. ¶¶ 175, 177-78. There is no reason to believe that the New Mexico regulations cited above, which require the Distributor Defendants to report on and guard against diversion of controlled substances could not include the Complaint's allegations that Defendants unlawfully distributed prescription opioids in New Mexico.

Two federal courts have recently granted attorney general motions to remand that presented nearly identical issues, and both courts held that state law language similar to New Mexico's imposed duties on McKesson and other defendants to not fill suspicious orders. *See Morrisey,* 2017 WL 357307 *8 (West Virginia's requirement that "[a]ll registrants shall provide

effective controls and procedures to guard against theft and diversion of controlled substances" could support theory to not fill suspicious orders.); *State of Delaware, ex rel. Matthew P. Denn, Attorney General of the State of Delaware v. Purdue Pharma L.P., et al.*, 1:18-383-RGA, 2018 WL 1942363, at *3 (D. Del. Apr. 25, 2018) (holding that Delaware's requirement that distributors "maintain 'effective controls against diversion [into illegitimate] channels'" supported theory that defendants created a public nuisance by not reporting suspicious orders.) Whatever putative duty exists under the DEA letters, McKesson has not shown that Plaintiff's claims are predicated solely on obligations under federal law because the Complaint identifies other duties implicated by state law. As in *Morrisey*, removal jurisdiction is lacking because Plaintiff's Complaint alleges "specific state-law causes of action" implicating state law duties. *See Morrisey*, 2017 WL 357307, at *8 (stating that "[f]ederal jurisdiction is disfavored for cases … which involve substantial questions of state as well as federal law.") (quoting *Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010)).

Thus, contrary to McKesson's claim that Plaintiff can prevail only by showing that Defendants violated the FCSA, it appears that Plaintiff could show that Defendants violated state law duties to control, report and guard against the diversion of prescription drug orders, meaning that the federal statute is not necessarily raised. While a determination of a duty and violation of that duty under the FCSA will likely occur in examining Plaintiff's claims, so also will examination of New Mexico common law, statutes, and promulgated rules to determine Defendants' duty, if any, to prevent "diversion" of prescription drugs into illicit channels. And to the extent, if any, that Plaintiff's claims are "partially predicated on federal law, federal law would still not be necessarily raised." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 164 (3d Cir. 2014) (citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S.

13

800, 810 (1988) ("[A] claim supported by alternative theories in the complaint may not form the basis for [federal] jurisdiction unless [federal] law is essential to each.")) (emphasis removed). New Mexico state law provides alternate theories for a finding of liability against McKesson and its codefendants because the Complaint implicates numerous alleged duties under state law. Thus, as in *Merrell Dow*, the Complaint refers to the FCSA, its regulations, and the DEA letters as "available criter[ia] for determining whether" Defendants are liable, but their liability, if any, does not hinge *exclusively* on federal law, as McKesson argues. *Merrell Dow*, 478 U.S. at 807.

Nor are the federal issues raised in the Complaint "substantial" under the third *Grable* factor in that they are not important "to the federal system as a whole." *Gunn*, 568 U.S. at 260. Even if there was a violation of the FCSA, its promulgated rules, and the DEA's interpretation of the statute, no large-scale federal interests of the kind in *Grable* – the tax code – are implicated by such a violation. In *Grable* federal adjudication was appropriate over the plaintiff's state law quite title action because of the government's interest in uniformly satisfying its tax claims and providing secure title to purchasers at tax sales. Here, Plaintiff's statutory and common law claims of negligence, fraud, public nuisance, unfair practices, and racketeering raise no larger substantial federal interests and do not implicate "the action of any federal department, agency, or service," such as the IRS. *Empire,* 547 U.S. at 700. Plaintiff's claims will be "fact-bound and situation-specific" and do not readily present a pure issue of law which federal adjudication could resolve "once and for all." *Id*. *See Bender*, 623 F.3d at 1130 ("[F]ederal jurisdiction is disfavored for cases that are 'fact-bound and situation specific' or which involve substantial questions of state as well as federal law.") Moreover, the Court notes that, as here, "the absence of a private right of action" under the FCSA is a "consideration in the assessment of substantiality" – the "primary importance" of which is that "allowing jurisdiction when Congress

had not intended a private right of action would have seriously disrupt the balance of labor between state and federal courts." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1233 n. 5 (10th Cir. 2006).

It is thus clear that the final element of *Grable* is not satisfied – namely, federal adjudication of Plaintiff's state law claims would "disrupt[] the federal-state balance approved by Congress." McKesson recently unsuccessfully removed a similar opioid related lawsuit brought by the State of Delaware to a federal district court on similar grounds as its removal to this District. As nicely stated by the Delaware federal district court, the final *Grable* prong counseled against removal jurisdiction because

> if the [FCSA] standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. … Here, much like *Merrell Dow*, entertaining 'garden variety' state law tort claims resting on federal statutory violations, such as negligence and fraud, could lead to a flood of state law claims entering federal courts and could disturb congressional intent regarding federal question jurisdiction in § 1331.

*Delaware ex rel. Denn*, 2018 WL 1942363, at *5 (citing *Grable*, 545 U.S. at 318). Federal jurisdiction over this case would result in a "horde of original filings and removal cases raising other state claims with embedded federal issues," *Grable*, 545 U.S. at 318, which weighs heavily in factor of remanding this case to state court.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand **[Doc. 10]** is **GRANTED** and the case is **REMANDED** to the First Judicial District Court of Santa Fe County.

**IT IS ALSO ORDERED** that Distributor Defendants' Joint Motion to Stay Pending Ruling by the Judicial Panel on Multidistrict Litigation **[Doc. 5]** and Plaintiff's Motion to Expedite Briefing on its Motion to Remand **[Doc. 11]** are **DENIED** as **MOOT**.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE